And we have the unusual situation where the warden goes first. May it please the Court, David Glassman, Deputy Attorney General for the appellant in this case. This case comes to the Court following review by the California Court of Appeal of an underlying robbery conviction sustained by the petitioner in this habeas corpus proceeding. And we submit that in resolving this case, the State Court of Appeal did not unreasonably apply controlling Supreme Court precedent. And for that reason, habeas corpus relief is not appropriate in this case. Didn't you have habeas bruden error here? There was error, Judge Kaczynski, in allowing a police officer to testify as to prior statements of an accomplice. And that the State court found that to be Federal constitutional error and further found that that error was harmless under Chapman v. California. And we do not dispute the ---- Is that a yes? That is a yes. We do not. We start with plain bruden error. You've got an obvious error, violation of a longstanding ---- I mean, that was a case that I even had been deciding when I went to law school. So I know it's clearly established. Yes, Your Honor. And we don't dispute ---- So I read after Marver v. Madison. So we're really only discussing prejudice here. All right. If that's the case ---- I mean, what could be more prejudicial than having somebody ---- I mean, it's the very thing that bruden tries to guard against, which is to have the co-conspirator convict, you know, the two defendants convict each other. And does it make any difference if this is put to the intermediary of a police officer, particularly when the co-defendant gets on the fence? I'm not going to talk about it because I might incriminate myself. I might prove myself guilty. I mean, I don't know. It's hard to imagine something that would be ---- some scenario in which this would not affect the jury. Let me address that question in two ways, one of which has to do with the trial itself and the prejudice involved in the trial context, and the other has to do with the standard of review given it's an habeas corpus case. In terms of the prejudice, admittedly, it is a prejudicial event. I'm not ---- I'm not discounting that fact. However, ultimately, cases require us to look at the weight of the evidence in the case, and we submit that this is a case in which both the victim and another eyewitness identify the Petitioner as the perpetrator of the crime. And given that it is appropriate to engage in a harmless error evaluation of the case, we submit that the State court did not act unreasonably in deciding under a more rigorous standard of review, the Chapman standard, that the error was harmless in this case. The victim testifies that she is certain of her identification. She testified not only at trial, but she identified the Petitioner prior to trial from a photographic array. Now, it is true that when shown the photographs by the police officer, she told him that her identification was not certain, and she later testified at trial that her tentativeness or her expression of a tentative identification was based upon her fear of reprisal from the Petitioner. And the ---- again, the State appellate court did make factual findings in that regard, that her expression of reservation, her explanation of her reservations was sincere. We have a second witness who did not identify the Petitioner prior to trial, it is true, but who explained to trial that she had only seen him in profile, and that when allowed the opportunity to see him in profile at the trial, she was also, as she said, positive that he was the assailant. So we have a second witness who did not identify the Petitioner prior to trial,  at the trial, she was also, as she said, positive that he was the assailant. So what significance should we attach to the jury's request to have the Barnum testimony read back and then came back with a verdict promptly thereafter? That's pretty powerful stuff. Again, I cannot dismiss the fact that the inquiry is there on the record. However, ultimately, the issue is whether or not, viewed objectively, the harmless error standard applies in this case or not. Do I recall correctly that the magistrate judge faulted the Court of Appeals' harmless error analysis for not discounting or not disregarding the curative instruction? That's correct. And I'd like to address that as well. But that brings me to the second aspect of prejudice that Judge Kaczynski raised, and that does have to do, again, with this standard. The State Court found under Chapman that the error was harmless. And as you point out, Judge Silberman, the magistrate faults the State Court for the allegedly curative instruction, but also for failing to consider what the district court refers to as the NAMIT claim, which, as you know, an argument that I have is that there is no NAMIT claim raised by the Petitioner in this case. I submit that when a — well, getting to your question directly, I think it's somewhat of an overstatement to say that it was deemed a curative instruction. The State appellate court simply said that when the jury was instructed in the case, they were instructed to view the accomplice's statement with distrust and to view it with caution. Now, it is true, and I agree with the district court, that given the error involved, the instructions — instructions could not be deemed curative in the pure sense. They can't cure the error per se, but they did reiterate to the jury that that — that the accomplice's statement should be distrusted and discounted. So — but moreover, the major standard of review point that I want to make is that when the case is before this Court, the question under Brecht v. Abrahamson is no longer the Chapman reasonable possibility test. It is a different harmless error standard. And under that standard, again, given that there were these identifications by these victims in a case that turned on identification, we submit that habeas relief is not appropriate when the district court says, for example, that, well, only by listening to the accomplice was there — was there information about a plan to rob. Planning is not an element of robbery. The issue in the case was the identity of the perpetrator. That was the crucial issue to resolve. I would like to address the other claim, if only to make a clarification, and that is, as the Court knows, the alternative basis for relief relied upon by the district court. The initial claim addressed by the district court is that this case presented NAMIT error. NAMIT error is based upon observations in the Supreme Court case of NAMIT v. United States in which the Court says that it is possible, although they don't find it there and I don't believe they have found it since, it is possible that egregious prosecutorial misconduct, for example, in the repeated questioning of a witness who has invoked the Fifth Amendment, questions which, in effect, smuggle answers in, can be a constitutional violation. Our point was and remains that that claim was never raised by the Petitioner. It was not raised in the trial court. In fact, most of the objections in the trial court don't come from the Petitioner's counsel. They come from the accomplice's lawyer. It was never raised in the State court of appeal. A clarification I wanted to make today, because I discovered it prior to reviewing the argument and I apprised counsel of it late last week, is that I did locate a citation to NAMIT, not in any document ever filed by the Petitioner, but in the return that the State filed in the district court. One reference to the citation, I can read it and I can also lodge the document with the court if the court wants to consider it along with my arguments. Again, my argument remains that that claim was not preserved by the Petitioner, but I acknowledge that that citation was made in our return. So my point ultimately, if we are looking at the significance of the accomplice's statement, it was not mentioned in the closing argument, and it is not an integral part of the verdict that rests on these identifications by percipient witnesses to this crime. And for that reason, we submit that habeas corpus relief is not appropriate in this case. Thank you very much, and I'll reserve my remaining time for rebuttal. Thank you. Thank you. Thank you, Mr. Petitioner. May it please the Court. Good morning, Your Honors. Darlene Ricker on behalf of the appellee, Charles Block. First, I'd like to ask the Court to view this case in the context, in overall context of the prejudice. We are talking about a three strikes case here, and it did result in a sentence of 41 years to life. So the prejudice that resulted from the error was extreme. And as far as whether or not Mr. Block raised a NAMIT claim, it's also important to remember that he was pro se at the time, and the rule of leniency does apply to a pro se litigant. And there was even a case cited for another purpose by the appellant that supports this, which is Peterson v. Lampert at page 1159. I'm a little confused about the significance of the NAMIT claim. If I understand the NAMIT claim, it is that there was Barnum's statements came in by insinuation through questioning. Right? Is that the way you interpret it? She took the – she continued to take the fifth, and her – the substance of her statement kept being inserted before the jury by questioning that she declined to answer. That's correct, Judge Silverman. It seems to me the whole thing has been superseded then when they bring in the cop to testify to what she said. Superseded how, Your Honor? Well, now that they testify this is what she said, instead of insinuating this is what she said, they bring the cop in to say this is what she said. So I don't know what the big deal is. That's correct, Your Honor. It compounds the error, basically. Are you claiming error for the very – putting her on the stand? Yes, Your Honor. Knowing that she would invoke the fifth? Correct. That's NAMIT error? That is exactly NAMIT error. Whereas Douglas error is – I'm sorry, Your Honor. Well, the error could be of two kinds. One of them is putting her on the stand, asking her a simple question to which she invoked the first, and then you say, okay, thank you very much, you're allowed to leave. And the very asking of the question and the invocation of the right itself could be the error. There's also this idea that if you keep asking witnesses repeatedly insinuating questions or leading questions, that the very asking of the question will implant in the juror's mind some idea about the likely answer, and then even not getting an answer will nevertheless be a form of testifying. So I'm – I'd just like to know, is it the putting on the stand? Is it the asking of the question? Is it both or what? Yes, Judge Kuczynski, it's all of them. It's a continuum. It's a continuum, actually, that feeds upon itself. So the NAMIT error – Well, I was actually tying into your similar question. It seems to me if your claim is based upon the asking of the questions, then probably that claim is superseded or is sort of made irrelevant because, you know, the policeman gets on the stand and says that's what she said, so you no longer have to deduce what the witness would have said based on the questions. But it seems to me the putting on the stand is not – is not – is not superseded, or maybe you would argue that it's not superseded, because there they see the witness in the flesh, they see her invoke the right not to testify, so the likelihood that they'll believe the – I mean, they might think the policeman is lying, but here they have a flesh-and-blood witness who supposedly made the statement and is saying if I testify, they'll incriminate me. That tends to buttress the policeman's testimony. Exactly, Your Honor. The – That's what I was really sort of wondering, whether you – the claim that putting her on the stand itself was a – was a – is that in the case? It is, Erra, because the mere fact of her being on the stand and refusing to answer is prejudicial. So was that argued in the petition? It was, Your Honor. Okay. It was raised in the petition. I'm sorry? It was raised in the petition. It was raised inartfully, perhaps. But it was raised below. It was raised below. You were appointed here? I was appointed only on appeal. Okay. It was raised below in the sense that I argued earlier that he was a pro se litigant and made reference to these standards without specifically naming NAMIT. And I would ask the Court to consider that, although it wasn't the Respondent's burden to raise a NAMIT issue, the fact that Mr. Glassman does bring forth to the Court that in the appellee's answer, which I believe was at page 16, that the Respondent at that time and at that point did basically argue in the inverse, that NAMIT did not apply, but did mention NAMIT, at least is recognizing that Mr. Block was trying in his own inartful way to make a NAMIT claim. And the reason NAMIT is still important, I mean, the Douglas error is admittedly far more egregious, but the NAMIT error is important because by the witness who was a co-defendant, who had fled guilty, being on the stand and refusing to answer, that's what adds critical weight to the prejudice. Mr. Glassman says, yeah, okay, so it shouldn't have come in, but you have two eyewitnesses who identified this guy. Yes, Judge Silverman, but those eyewitnesses were, those were pretty sketchy eyewitness identifications. If I recall correctly, there was some trouble. I think they did not pick him out from the original six-pack photo lineup. And then in court, if I recall correctly, the eyewitness identifications were only made after they had Mr. Block stand up. And that is in the record. What's so special about that? That it's not a very strong eyewitness identification. If the witness can't, of their own accord, point the person out. Can't figure out who in the courtroom could be the defendant? Yes, Your Honor. Maybe it's the FBI or the two persons standing next to the prosecutor. It's happened, Your Honor. It has happened. Not in my experience, but I have been in this situation as much as my colleagues. Don't you think it was prejudicial to call her as a witness knowing that she was going to take the Fifth Amendment? Exactly. And then follow her up with an officer who then testified what she told him. In other words, didn't they have done that in camera before they did that before the jury? Yes, Judge Arena, and they already knew, basically, that that was going to happen because there was a previous hearing held outside the presence of the jury where the witness said, I'm not going to testify. And the judge said, oh, yes, you are. And she said, no, I'm not. So they knew that. That's why that level of it is the NAMIT error. And then bringing the officer to testify afterwards as to what she refused to testify to is the Douglas error. But see, he really never had a chance to confront the witness herself. Correct. All he had was what the officer said that somebody told him, who was not on the scene, and he never had the opportunity to confront this witness. Correct. Which makes it even more prejudicial in the eyes of the jurors. The other thing we need to consider is that the officers, there were only four witnesses, anyway, four prosecution witnesses, the victim, the neighbor who was an eyewitness, the detective who arrested Mr. Block, and the officer who testified about the victim's prior statements. So you take four witnesses, two of them involve the victim in her statements, the victim who refused to testify. That's a pretty large chunk of the trial. And this was a two-day trial, but really, in essence, it was probably a one, one-and-a-half-day trial. The first day of the trial adjourned at, I think, 2 o'clock in the afternoon. It was only part of the day. So this was a pretty brief trial. So you're talking two of the four prosecution witnesses being involved in these two errors that the district court found. She was no innocent lamb. I mean, she went with him, and she knew what he was doing. Isn't that so? Yes. Yes. I mean, you could say she might have been an accomplice. She was, and that's those statements that came in through the officer, that's what they were in regard to, the planning. Wouldn't that have been helpful to him, to have the jury know that? Somebody was an accomplice or went with him and knew exactly what they were going to do? Yes. It is, and it's extremely prejudicial for that reason. The jury never knew that. No. You've read the Supreme Court cases. They don't want us to set aside very many of these state convictions, and they've set a pretty high threshold for when a state court of appeal has looked at the conviction and has made a decision. We have to pretty much believe they were, I don't know, drunk or crazy or something to have come out with a decision. I mean, maybe we don't agree with the court of appeal. Maybe the three of us would come out all a different way, but can we really say that it's unreasonable for a appellate court to look at this record and conclude that the error was harmless, that there were other witnesses the jury could have convicted, would have convicted based on the remaining evidence? It is, Your Honor, mainly in the sense that the court had questioned Mr. Glossman earlier regarding the jury's request for readback of the office's testimony. Readback of the very prejudicial or the erroneous. Statements to which the witness had refused to justify. And what did the court of appeal do with that? The court of appeal said it was not prejudicial in light of the weight of the other evidence. I don't recall. Did it take into account the readback? I'm sorry, Your Honor. Did they take into account the readback? Yeah, I don't recall now. Did they, huh? The readback? Yeah. I just don't remember. I don't recall either. I don't remember either. It's a bit like a benchmark, isn't it? Mm-hmm. Yeah, most of the opinion is spent deciding this is error. The harmless error analysis is only one paragraph. It does not seem to say very much at all. It certainly doesn't deal with the readback. So it's not clear whether they took the readback into account. No, Your Honor, it is not. As we know from Taylor v. Maddox, failure to take into account relevant evidence. Yes, Your Honor. Bottom line, the court of appeal, potentially, or as it looks on the record from what we know of the record, didn't take into account factors that it should have and did take into account factors that it should not have. Okay, Ms. Vacker, anything further? No, Your Honor. Thank you. Judge Kuczynski, I'd like to begin with a point that you made, and that had to do with you asking appellees' counsel about whether the error has to do with placing Barnum on the stand versus the repeated questioning. To clarify, the State appellate court found, as a matter of State law and of Federal constitutional law, that it was not error, it is not error under State law to allow a witness who has no valid Fifth Amendment right to invoke the Fifth Amendment in the presence of the jury. And the district court found the same as a matter of Federal constitutional law. And I would submit that that claim, that is, the claim of whether or not it was appropriate or permissible to put Barnum on the stand, knowing that she would invoke, that claim was not raised in this appeal. And you can review the appellee's brief to see whether or not there is an error. It's not clear to me whether she did or didn't have a valid constitutional right. I mean, she wasn't the district judge or the superior court judge did not order her imprisoned for contempt of faith or answer. She wasn't. So I'm — it's not clear. I mean, you tell me that she had — probably didn't have any First Amendment right because she had exhausted her remedies. But could she have been charged — could she have been subject to Federal charges? It — the — ultimately, and the answer is I don't know, but another — I mean, this was a mail carrier, wasn't it? Correct. Who was performing his duties, her duties or whatever? Right. Was delivering the mail. Delivering the mail. So easily could have been a Federal felony charge for interference with a Federal officer. My recollection — I'm just asking a question, yes? Yes. Okay. So this immediately comes to mind that she could have been worried about Federal charges, right? So when you stand there and say she had no valid First Amendment rights, the predicate for that is what? Well, the predicate for that is that she is immune from Federal prosecution. In other words, for my argument to apply. But my recollection of the record is that — She was given Federal immunity? Is that her counsel did not dispute in the trial court that she could not be prosecuted. She was given Federal immunity? She was given total immunity. And this is in this record? That is my understanding of the way this was presented to this judge. And that has never been disputed in this case. In other words, it has not been argued in this case, in the district court level or in the briefs here, that she faced Federal prosecution and that for that reason the invocation was legitimate. What difference does that make? I mean, the problem is not whether she had a Fifth Amendment right. The problem is whether Block has the right not to have her hearsay statements come in. But my point, Judge Silverman, is that the information in the record has — each court reviewing it has determined that based upon the record presented, there is no basis to determine that she was not — that she had a lawful Fifth Amendment right. I agree with that. But the problem is then to continue questioning her and implying what her answers would have been when she's not going to testify. As I ask Ms. Ricker, I'm not sure that it makes any difference, because then the — you know, all hell breaks loose when they call the cop on the stand and he testifies exactly what she said. And so, you know, this is kind of much ado about nothing in a way. Well, let me then address her point about the prejudice that was discussed in her argument. First of all, I submit that it is not appropriate to look at issues such as the Petitioner's sentence in determining whether it was prejudicial. That was a jury plea. Okay. Secondly, it is not appropriate, I submit, to consider whether or not the Petitioner is pro se. He was not pro se in the trial court. In fact, there were effectively two lawyers arguing on his behalf there, his lawyer and Barnum's lawyer. He was not pro se in the California court of appeal. He was pro se in the district court. He was pro se in the district court. Well, we do have some special lenience that we give to pro se litigants in our courts. Now, maybe the State courts of California don't, but we do afford a certain degree of lenience, and counsel is entitled to argue for that lenience in terms of procedural aspects of the case. But, Your Honor, in the State appellate court, he had the counsel is appointed as a matter of right in that court. But she was not arguing, as I recall, anything about any special lenience in the State appellate courts, but she was answering his questions. I was asking about what things were pled and were not pled and what were presented and not presented in the district court. But, Judge Kaczynski, my point is that the issue as to how these claims were addressed, whether there was evidence she was subject to prosecution, whether there was an amic claim, we look to that and how the case was litigated in State court. So, regardless of the case. Look, if you don't want to argue waiver in the district court of any of these issues, let's perfectly fine that we don't need to give any special lenience, and they're all raised, and you're home free. I thought you were arguing that some of these issues may not be properly presented in the district court, and that's why I was asking Ms. Reker about what was raised and what was not raised, and she was telling me, giving him a break, he was supposed to say, if you want to tell me nothing was waived in the district court, then we don't need that. I'm simply saying, Judge Kaczynski, that my first point about exhaustion has to do with the State court insofar as I'm arguing waiver. I understand. Okay. But I was discussing a different point with counsel. Okay. I'm excused. So telling me that you have a different argument on a different point doesn't help. All right. Are you arguing, are you now conceding that everything was properly raised in the district court, so we don't have to give any lenience to the petitioner for being pro se because whatever was in the State court record is now properly before us? Yes, in effect, because my argument is that it's an amic claim only in the — only once it gets to the report and recommendation stage. I want to make a point, too, about, Judge Weiner, you asked about what the jury knew in terms of the role of this witness. The jury was instructed that the witness was an accomplice as a matter of law. And the jury was instructed, and these instructions are in the excerpts, to view the statements of the accomplice with distrust. And finally, the only thing I would add as far as prejudice is, we can count the witnesses — we can also count the fact that, you know, one witness is positive, the other says that she's certain, and becomes hysterical or very emotional on the witness stand. You will concede, though, that the discussion of the prejudice to which you want us to give such great deference in the court of appeal is a scant paragraph and not very informative, but it's not the kind of prejudice that now — I mean, whether you count the witnesses or you look at the weight or anything else, this is a — you know, the discussion of prejudice on which this whole thing hinges, there's not very much. There's one paragraph, the citation to Chapman, and that's it. There's no mention of the readback, which is quite significant. I mean, this is the jury saying, we think this evidence that turns out to be constitutionally defective, should not have come in, a clear constitutional violation, that they want to hear it again. And right after they hear it, they convict. One would expect — I mean, maybe if the court of appeal had discussed it and said, look, here's how we explain in light of everything else, but they seem unaware of it. Justice Kennedy, I would make two points. One, I think it's fair in terms of assumptions, the fact that an aspect of the record is not set forth in the decision. Gene, we didn't take that position in Taylor v. Maddox, did we now? You've read Taylor v. Maddox, no doubt. I do not recall it specifically, no, Your Honor, in terms of the point that you're making. But what I would say is that — Your office lost that one. I don't recall, and I'd have to review that 75-page brief again with this in mind, I don't recall whether the readback was alleged as an aspect of prejudice in the State appeal. So, but regardless — Well, but you haven't said that it was waived somehow by not being — by not being raised. So you waived the waiver. There was a waiver. You want us to defer to the judgment. What you have said is, look, you are — you have to defer to the decision of the court of appeal. And so I, you know, I went and looked at the decision of the court of appeal on the very point, the point that you say is crucial, the issue, because you've now conceded a constitutional error. You say, but wait a minute, there was no prejudice. And there are one, two, three, four, five, six, seven, eight and a half lines, eight lines in one word on this whole thing. Not much to defer to there. I mean, not exactly what we would call a thorough job, not coming to grips with the difficulty of, you know, of what role the evidence played in the whole context of the testimony. No discussion of the readback. I don't know. It's a little hard to defer to. I, given that I see my time is running out, what I would say is that ultimately the question in this case is whether a State court could reasonably conclude that this error was harmless under the Brecht standard. And given the eyewitness identifications in this case, which are addressed in that decision, I would submit that it is reasonable to engage in that deference, and indeed it is required by Brecht v. Abrahamson and this Court's recent decision in Medina v. Hornet. Thank you very much. Thank you. Thank you very much, counsel. The case is argued and will stand submitted. We are adjourned.
judges: Kozinski, Silverman, Weiner